**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CONTRACT MANAGEMENT, INC.,
    *Plaintiff-Appellant,*

v.

DONALD RUMSFELD, in his representative capacity as Secretary of Defense; HECTOR V. BARRETO, JR., in his representative capacity as Administrator of the Small Business Administration,
    *Defendants-Appellees.*

No. 04-15049

D.C. No.
CV-03-00232-HG

OPINION

Appeal from the United States District Court
for the District of Hawaii
Helen Gillmor, District Judge, Presiding

Argued and Submitted
December 6, 2005—San Francisco, California

Filed January 11, 2006

Before: Betty B. Fletcher, David R. Thompson, and
Carlos T. Bea, Circuit Judges.

Per Curiam Opinion

375

## SUMMARY

**Government Law/Public Contracts and Procurement**

The court of appeals affirmed a judgment of the district court. The court held that the Small Business Administration's (SBA) nondiscretionary implementation of the HUBZone Program was in accord with congressional intent under the Small Business Act.

Appellant Contract Management Industries (CMI) had long provided custodial services at the Pearl Harbor Naval Base and Shipyard (Pearl Harbor) under contracts which had been awarded as small-business set-asides under the Small Business Act. When the contracts were set to expire, the Navy combined the four contracts then being performed by CMI with other custodial contracts, consolidating them into three new contract solicitations. One such contract was redesignated as a solicitation under the SBA's "HUBZone Program," which favored small businesses located in economically disadvantaged or distressed areas. This redesignation excluded CMI because, although it qualified as a small business under the SBA, it was not a HUBZone small business, as defined in SBA regulations. CMI brought suit against appellees federal government officials (collectively, the Government) challenging the implementation of the Small Business Administration's (SBA) HUBZone Program. The district court granted summary judgment to the Government.

CMI appealed.

[1] The statutory language governing the HUBZone Program commands in unequivocal terms that a contract opportunity be designated as a HUBZone set-aside if the contracting officer has a reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers and that the award can be made at a fair market price. [2] By con-

trast, in the Section 8(a) SBA Program, which assists socially and economically disadvantaged small business concerns, Congress has conferred discretion on the SBA to determine in the first instance whether a contract should be placed in the program. [3] The text of the Section 8(a) Program is materially different from that of the HUBZone Program. Accordingly, the discretionary nature of the Section 8(a) Program cannot be imported into the HUBZone Program thereby eliminating the mandatory aspect of the HUBZone Program. [4] The SBA's regulations implementing the HUBZone Program were in accord with congressional intent under the Small Business Act. Consequently, there was no reason to disturb the Navy's decision to deny CMI the opportunity to bid on the contract in question at Pearl Harbor.

## COUNSEL

Timothy H. Power, Walnut Creek, California, for the appellant.

Eric D. Miller, U.S. Department of Justice, Washington, D.C., for the appellees.

## OPINION

PER CURIAM:

Appellant Contract Management Industries ("CMI") brings this suit challenging the implementation of the Small Business Administration's ("SBA") "HUBZone Program." The district court granted summary judgment to the Government. We have jurisdiction under 29 U.S.C. § 1291, and we affirm.

### I.

CMI has provided custodial services at the Pearl Harbor Naval Base and Shipyard ("Pearl Harbor") since 1985. At the

time CMI brought this suit, it held four contracts at Pearl Harbor, all of which were awarded as small-business set-asides under the Small Business Act. *See* 15 U.S.C. § 644. Those contracts were set to expire on September 30, 2003.

In December 2002, the Navy combined the four contracts then being performed by CMI with other custodial contracts, consolidating them into three new contract solicitations. One such contract, Solicitation No. N62742-03-R-2216, which includes custodial work from two of CMI's former contracts, was re-designated under the Small Business Act's HUBZone Program. It excluded CMI because, although it qualifies as a small business under the Small Business Act, it is not a HUBZone small business. CMI therefore faced the prospect of losing a portion of its custodial work with the Navy and brought suit to stop the Navy from awarding the solicitation to another company.[1]

CMI brought a motion for preliminary injunction, which the district court granted on June 27, 2003. On September 18, 2003, the district court denied CMI's motion for summary judgment and granted the SBA's motion for summary judgment. In ordering judgment for the SBA, the district court denied CMI's request to invalidate the HUBZone Solicitation at issue or otherwise enjoin the Navy from awarding the contract at issue as a HUBZone Program set-aside. CMI filed a timely notice of appeal.

## II.

We review the district court's grant of summary judgment de novo "to determine 'whether the district court correctly applied the law and if, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues

---

[1] During the pendency of this lawsuit, the parties agreed that CMI's contracts would continue for an additional year — i.e., until September 30, 2004.

of material fact.' " *Government of Guam v. United States*, 179 F.3d 630, 632 (9th Cir. 1999) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)).

When reviewing an agency's construction of a statute it is charged with administering, we look first to the statutory text to see whether Congress has spoken directly to the question at hand. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (footnote omitted). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. If so, we defer to the agency's interpretation.[2]

### A.

Congress enacted the Small Business Act in 1953 to "aid, counsel, assist, and protect, insofar as possible, the interests of small-business concerns . . . ." 15 U.S.C. § 631(a). The purpose of the Act is to ensure the attainment of a "Government-wide goal for participation by small business concerns [in Government contracts] . . . [of] not less than 23 percent of the total value of all prime contracts for each fiscal year." *See* 15 U.S.C. § 644(g).

The SBA is charged with carrying out the policies of the Act and issuing such rules and regulations as it deems necessary. *See* 15 U.S.C. §§ 633(a), 634(b). In order to realize this goal, federal agencies, acting in concert with the SBA, are empowered to establish small business set-asides for contract solicitations. 15 U.S.C. § 644(a).

---

[2] Throughout this inquiry, we give "considerable weight . . . to an executive department's construction of a statutory scheme it is entrusted to consider . . . [and] deference to administrative interpretations." *Id.* at 844.

In addition to its broader goals of aiding small businesses in general, the Small Business Act also contains special programs favoring certain categories of small businesses. Two such programs are relevant to this case. First is the Section 8(a) Program, which assists "socially and economically disadvantaged small business concerns." 15 U.S.C. § 637(a)(1)(B). Second is the HUBZone Program, 15 U.S.C. § 657(a), which favors small businesses that are located in economically disadvantaged or distressed areas. In order to qualify as a HUBZone small business, a company must have its principal office in a HUBZone area and have at least 35 percent of its employees residing in the HUBZone area. 15 U.S.C. § 632(p). *See also* 13 C.F.R. §§ 126.304, 126.700.

The statutory language of the Section 8(a) Program is materially different from that of the HUBZone Program. Under the Section 8(a) Program, the SBA may, in its discretion, enter into contracts under the Small Business Act "whenever it determines such action is necessary or appropriate," 15 U.S.C. § 637(a)(1)(A), and the relevant agency "officer shall be authorized in his discretion to let such procurement contract to [the SBA]." *Id.* Thus, it is up to the agency to determine, in the first instance, whether to place a contract within the Section 8(a) Program. If the agency so decides, the statute requires that the contract opportunity "shall" be competitively awarded as a Section 8(a) set-aside if certain statutory criteria are satisfied. *See* 15 U.S.C. § 637(a)(1)(D).

The HUBZone Program, by contrast, commands in unequivocal terms that a contract opportunity be designated as a HUBZone set-aside when certain criteria are met:

> Notwithstanding any other provision of law . . . [a] contract opportunity *shall be awarded* pursuant to this section on the basis of competition restricted to qualified HUBZone small business concerns if the contracting officer has a reasonable expectation that not less than 2 qualified HUBZone small business

concerns will submit offers and that the award can be made at a fair market price.

15 U.S.C. § 657a(b)(2) (emphasis added).[3]

Pursuant to this statutory language, the SBA has adopted regulations mandating that a contracting officer "must set aside the requirement for competition restricted to qualified HUBZone [small businesses] if the contracting officer: (1) Has a reasonable expectation after reviewing SBA's list of qualified HUBZone SBCs that at least two responsible HUBZone SBCs will submit offers; and (2) Determines that award can be made at fair market prices." 13 C.F.R. § 126.607(c) (current through Dec. 28, 2005); *accord* 48 C.F.R. § 19.1305.[4]

B.

CMI qualifies for certain small-business set-asides but is neither a Section 8(a) nor a HUBZone designee. Thus, after the Navy decided to place Solicitation N62742-03-R-2216 within the HUBZone Program, CMI challenged the designation by arguing that the regulatory scheme mistakenly requires a HUBZone designation when certain criteria are met.

The district court found that the SBA correctly interpreted

---

[3] In order to avoid any conflict between the Section 8(a) Program and the HUBZone Program, the SBA interprets the phrase "[n]otwithstanding any other provision of law" in 15 U.S.C. § 657a(b)(2) not to include the other provisions of the Small Business Act. In accordance with that principle, the SBA has promulgated regulations that exempt from the Program contract solicitations currently preformed by, or designated for, a Section 8(a) small business. *See* 13 C.F.R. § 126.605. CMI challenged that interpretation in district court but does not do so on appeal.

[4] The SBA's implementing regulations are codified at 13 C.F.R. Part 101 *et seq.* The Federal Acquisition Regulation, a set of uniform policies and procedures for the acquisition of supplies and services by executive agencies, are codified at 48 C.F.R. Part 19.

the language of the Small Business Act and rejected CMI's request to invalidate the HUBZone contracting regulations.

### III.

CMI argues that Congress intended for the HUBZone Program — like the 8(a) Program — to be discretionary and that current regulations run counter to congressional intent. The basis for CMI's argument appears to be that any other interpretation would create a conflict between the two programs. CMI further contends that the Navy would not have chosen to re-designate Solicitation N62742-03-R-2216 but for the mistaken regulation requiring a HUBZone designation. Thus, CMI seeks to invalidate the HUBZone regulatory scheme so that the Navy, in its discretion, can award the contract at issue to CMI.[5]

[1] However, as previously noted, the statutory language of the Section 8(a) Program is materially different from the language creating the HUBZone Program. The statutory language for the HUBZone Program clearly states that a "contract opportunity *shall be awarded*" when "the contracting officer has a reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers and that the award can be made at a fair market price." 15 U.S.C. § 657a(b)(2) (emphasis added).

[2] By contrast, in the Section 8(a) Program, Congress has conferred discretion on the SBA to determine in the first instance whether a contract should be placed in the program. The statutory language allows the subletting of contracts

---

[5] The only evidence CMI offers in support of its contention that the Navy would award it Solicitation N62742-03-R-2216 under a discretionary regime is a rather terse (and unclear) e-mail exchange between a Navy contract administrator and a representative of the SBA. Although we doubt whether this proves CMI's contention, we need not resolve this question because we agree that the current HUBZone regulations accord with congressional intent.

CONTRACT MANAGEMENT v. RUMSFELD          383

"whenever [the SBA] determines such action is necessary or appropriate." 15 U.S.C. § 637(a)(1)(A). Under such circumstances, the "officer [of the contracting agency] shall be authorized in his discretion to let such procurement contract to [the SBA]." *Id.* Thus, only if the SBA invokes its discretion under the statute must a contract opportunity be awarded as a Section 8(a) set-aside. *See* 15 U.S.C. § 637(a)(1)(D).

[3] CMI, in short, would import the discretionary nature of the Section 8(a) Program into the HUBZone Program in spite of the differences in statutory text. However, as the district court noted, "Congress has used the term 'shall' to mandate that certain contracting opportunities be set aside for competition restricted to HUBZone small businesses. With regard to the 8(a) Program . . . Congress has . . . le[ft] to agency discretion the initial offer and acceptance of contracts into the 8(a) Program." *Contract Management v. Rumsfeld,* 291 F.Supp.2d 1166, 1176 (D. Haw. 2003). The text of the Section 8(a) Program is materially different from that of the HUBZone Program. Accordingly, the discretionary nature of the Section 8(a) Program cannot be imported into the HUBZone Program thereby eliminating the mandatory aspect of the HUBZone Program.[6]

CMI further argues that the SBA's regulations thwart congressional intent because they allow HUBZone businesses to bid on contracts nationwide rather than in the limited areas occupied by HUBZone residents. However, there is no indication in the statutory text that HUBZone contracts must be awarded exclusively within HUBZone areas. Rather, Congress requires a HUBZone business to have its principal office in a HUBZone area, with at least 35 percent of its

---

[6] We note, as well, that the SBA's regulations are presumptively correct given that Congress amended the Small Business Act in 2000 without altering the statutory language in a way that would affect the SBA's interpretation of the HUBZone Program. *See New Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 535 (1982).

employees residing in such areas as well. *See* 15 U.S.C. § 632(p); 13 C.F.R. §§ 126.304 and 126.700. There is no requirement of any sort that the contract be *performed* in a HUBZone area. Indeed, the very nature of such historically underutilized zones makes it unlikely that a significant volume of contracts would be found within them. We therefore reject CMI's overly narrow interpretation of the HUBZone Program.[7]

[4] In short, we agree that the SBA's regulations implementing the HUBZone Program properly accord with congressional intent under the Small Business Act. Consequently, we see no reason to disturb the Navy's decision to deny CMI the opportunity to bid on the contract in question at Pearl Harbor.[8]

## IV.

For the foregoing reasons, we affirm the district court's decision to deny CMI's request for summary judgment and to

---

[7] CMI's suggestion that all small business set-asides will eventually become HUBZone contracts under the existing regulations is far-fetched. At the outset, CMI agrees that HUBZone contracts cannot interfere with contracts already designated part of the Section 8(a) Program, *see* 13 C.F.R. § 126.605. Moreover, such a scenario is unlikely, as the three percent goal established for HUBZone businesses has yet to be attained: the current representation of HUBZone contracts stands at one percent. And Congress can certainly intervene and amend the statute at any time if the HUBZone Program ever does begin to encroach on the broader purposes of the Small Business Act.

[8] Of course, even if we did see tension or ambiguity between the statutory text and the regulations at issue, our analysis would not be complete. Under such a circumstance (not apparent here), we would apply the second part of the *Chevron* test to determine whether the regulations at issue were a permissible construction of the statute. *See Chevron*, 467 U.S. at 843. Were we to engage that inquiry, CMI could prevail only if it demonstrated that an alternate reading was not only permissible, but compelled.

| CONTRACT MANAGEMENT v. RUMSFELD | 385 |
|---|---|

grant the Government's motion for summary judgment.

**AFFIRMED.**